UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                              Chapter 11

DESIGNER EQUITY HOLDING COMPANY, LLC,               Case No. 09-17665-JMP

                     Debtor.

---------------------------------------------------------------x
DESIGNER EQUITY HOLDING COMPANY, LLC,

                     Plaintiff,                Adversary Proceeding
                                                No.

    -against-

NEXCEN BRANDS, INC.,                                **COMPLAINT**

                     Defendant.

---------------------------------------------------------------x

        The plaintiff, Designer Equity Holding Company, LLC ("DEHC"), by its attorneys, Goldberg Weprin Finkel Goldstein LLP, as and for its complaint against the defendant NexCen Brands, Inc. ("NexCen"), respectfully alleges as follows:

**PRELIMINARY STATEMENT**

        1.    DEHC and NexCen entered into an arrangement for the acquisition and ownership of the Bill Blass licensing business beginning in early 2007. Their relationship was embodied by a series of agreements, certain of which were initially induced by false assurances and misrepresentations made by NexCen, and thereafter violated and breached by NexCen by virtue of its subsequent decision to unilaterally sell the licensing business in derogation of DEHC's rights.

        2.    This adversary proceeding seeks damages for NexCen's tortious conduct leading up to DEHC's investment in the Bill Blass licensing business and NexCen's

subsequent contractual defaults under the parties' Amended and Restated Limited Liability Operating Agreement (the "BBJ Operating Agreement") relating to Bill Blass Jeans LLC ("BBJ").

3. BBJ was the holding company under which the equity ownership of Bill Blass International LLC ("BBI") was jointly owned by NexCen and DEHC. For its part, BBI was the operating entity which acquired the Bill Blass licensing business in 2007 from the former owner Resource Club, Ltd. ("Resource Club").

## THE PARTIES

4. DEHC is a New York limited liability company with its principal offices at 205 West 39th Street, New York, New York 10018.

5. DEHC filed a voluntary petition under Chapter 11 of the United States Code on December 31, 2009 and thereafter has continued in possession and management of its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

6. Upon information and belief, NexCen is a Delaware corporation, with its principal offices at 1330 Avenue of the Americas, New York, New York 10019.

## JURISDICTION

7. The Bankruptcy Court has jurisdiction over this adversary proceeding as a "core" proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (E) and (O) in that this adversary proceeding concerns the administration of DEHC's Chapter 11 case, seeks a turnover of property belonging to DEHC's bankruptcy estate and otherwise affects the liquidation of the assets of DEHC's bankruptcy estate.

## BACKGROUND FACTS

8. DEHC was formed by Arnold Simon ("Simon") and his associates, including Timothy Fullum ("Fullum"), following a request by Robert D'Loren ("D'Loren") (a former executive of NexCen) for Simon to participate with NexCen in the acquisition of the Bill Blass licensing business from Resource Club.

9. Before teaming with D'Loren, Simon and Fullum separately expressed an interest to purchase the Bill Blass licensing business from Resource Club on their own.

10. NexCen sought out Simon and Fullum as potential associates because of their significant experience and success in the apparel industry. Among other things, Simon developed and owned jean lines for Calvin Klein and was viewed by NexCen as a valuable participant in any intended sale transaction involving Resource Club.

11. Upon information and belief, direct negotiations between NexCen and Resource Club concerning the terms of sale of the Bill Blass licensing business were conducted throughout the fall of 2006.

12. During these pre-sale discussions, Simon and Fullum were repeatedly advised by representatives of NexCen (including D'Loren) that NexCen had conducted extensive due diligence of the Bill Blass licensing business and was satisfied and confident that Resource Club generated annual sales of Bill Blass jeans and other wearing apparel of at least $55-60 million per year (with corresponding net income of approximately $14 million per year) under a well-developed and stable network of worldwide license arrangements.

13. Representatives of NexCen further indicated to Simon and Fullum that they would maintain a comparable level of sales activity of at least $55 million going forward and there had been no adverse material changes in the Bill Blass licensing business that would affect ongoing operations in 2007 and into the future.

14. NexCen presented Simon various reports and other sales information, including written confirmation of sales activity in 2005 and 2006, and a listing of all existing licenses maintained by Resource Club on a worldwide basis.

15. As the majority partner in the intended acquisition, NexCen assumed full responsibility for conducting appropriate due diligence with Resource Club and dealt extensively with Haresh Tharani, the then president of Resource Club.

16. Additionally, upon information and belief, D'Loren and others had been previously associated with a predecessor of NexCen known as Aether Holdings, which was previously engaged by Resource Club to help sell the Bill Blass trademarks before embarking on a purchase on their own. This prior involvement provided D'Loren and NexCen with even greater access to conduct due diligence.

17. Simon and Fullum reasonably relied upon the results of NexCen's due diligence in deciding to participate in the acquisition of the Bill Blass licensing business with NexCen.

18. By virtue of NexCen's representations concerning satisfaction with extensive due diligence, Simon and Fullum agreed to participate, and subsequently capitalized both DEHC, as well as Designer License Holding Company Inc. ("DLHC") to become the primary licensee of Bill Blass jeans and wearing apparel in North America.

19. Based upon a significant monetary contribution, DEHC was granted an immediate 10% equity stake in BBI as a minority member, with the option to acquire an additional 10% equity interest, based upon various subscription agreements and earn-outs, all pursuant to a certain Amended and Restated Investment Agreement, dated as of December 19, 2006.

20. The sale transaction with Resource Club closed on or about February 15, 2007 for a total purchase price of $54.6 million in cash and stock.

21. As part of the acquisition, DLHC agreed to purchase certain residual seasonal Bill Blass jean inventory from Resource Club pursuant to separate Asset Purchase Agreement.

22. Additionally, Simon and his partners contributed more than $3.0 million to help NexCen and BBI fund the purchase price, and contributed another $12 million towards working capital and letter of credit facilities needed by DLHC to operate as the North American licensee for jeans.

23. Thus, the total aggregate investment made by Simon and Fullum and their financial partners in DEHC and DLHC exceeded $16 million.

24. Following the closing with Resource Club, it was discovered that NexCen had totally misrepresented the level of due diligence, if any, that it had actually performed.

25. Contrary to its expectations, DEHC inherited a badly faltering licensing business, with actual sales of Bill Blass jeans and wearing apparel drastically below $55 million and, in reality, not exceeding more than $15 million per year.

26. To make matters worse, NexCen, as the majority partner of BBJ, did not provide any meaningful marketing support to improve the Bill Blass brands, and effectively left the label to languish to the detriment of DEHC, DLHC, Simon and Fullum and their financial associates.

27. Additionally, post-closing, NexCen also came under SEC scrutiny for accounting irregularities in 2008, further deflating the value of the Bill Blass trademarks. As a consequence, the stock price of NexCen plummeted by approximately 90% in 2008, leaving the general perception in the retail industry that NexCen was on the verge of bankruptcy in 2008.

28. Hoping to salvage their considerable investment, Simon and Fullum commenced negotiations to attempt to buy-out NexCen under the BBJ Operating Agreement and assume complete control of the Bill Blass licensing business.

29. In September of 2008, and while these negotiations were ongoing, NexCen engaged Rothschild Inc. ("Rothschild") as a financial advisor in connection with a potential sale of the Bill Blass business.

30. Despite failing to consult with DEHC regarding Rothschild's initial retention, Simon continued to pursue good faith negotiations with NexCen and made a number of proposals that Simon and Fullum reasonably believed were under consideration by NexCen as the end of 2008 approached.

## NEXCEN'S OBLIGATIONS UNDER THE BBJ OPERATING AGREEMENT

31. Although Nexcen retained the right, as the managing member of BBJ, to pursue a sale it could not do so without first consulting with DEHC and providing at least 30 days prior notice pursuant to Section 8.7 of the BBJ Operating Agreement.

32. In their various dealings and negotiations with NexCen, Simon and Fullum duly relied upon DEHC's express and dual right to be consulted by NexCen and, thereafter, receive thirty (30) days prior notice before an actual closing with a third-party purchaser.

33. NexCen's obligations to DEHC in this regard were not only contractually mandated, but also arose by operation of law, since NexCen and DEHC were members in BBJ and jointly owned BBI. As such, their relationship was subject to a reciprocal duty of good faith and fair dealing, notwithstanding any purported exculpatory provisions in the BBJ Operating Agreement relating to fiduciary responsibilities.

34. DEHC was still in active negotiations with NexCen when Simon and Fullum suddenly learned, by letter dated December 24, 2008, that NexCen had unilaterally sold the Bill Blass licensing business to an entity organized by Peacock International Holdings LLC ("Peacock") for an amount less than what DEHC, Simon and Fullum were willing to pay for the business.

35. NexCen's decision to sell to Peacock was done without prior consultation with, or notice, to DEHC. It came as a shock to Simon and Fullum and effectively cut the legs out from their efforts to recoup their investment.

36. NexCen's sale of the licensing business to Peacock did not realize any value for DEHC, Simon or Fullum and was conducted in a manner that intentionally and knowingly disregarded all of DEHC's rights, entitlements and expectations under the BBJ Operating Agreement.

37. As a result of NexCen's sale to Peacock, DEHC, Simon and Fullum suffered complete loss of their investment, ultimately forcing DEHC and DLHC to seek Chapter 11 relief.

## AS AND FOR A FIRST CLAIM
## FOR BREACH OF THE BBJ OPERATING AGREEMENT

38. DEHC repeats and realleges the allegations contained in paragraphs "1" through "37" as though more fully set forth at length herein.

39. NexCen violated the provisions of Section 8.7 of the BBJ Operating Agreement by effectuating a sale of BBI to Peacock without first consulting with DEHC and/or providing DEHC with 30 days advance notice prior to a closing.

40. NexCen also violated its implied obligation of good faith and fair dealing because NexCen failed to keep DEHC informed of all possible transactions that could potentially impact its equity holdings.

41. NexCen knew of DEHC's strong interest in purchasing the Bill Blass licensing business. In fact, NexCen pursued negotiations with DEHC, Simon and Fullum without disclosing any contemporaneous third-party negotiations that NexCen was having with Peacock in violation of the BBJ Operating Agreement.

42. By unilaterally effectuating a sale of BBI to Peacock, NexCen breached the BBJ Operating Agreement.

43. That by reason of the foregoing, DEHC is entitled to a judgment against NexCen in an amount to be determined at trial to exceed $16 million, together with interest and costs of this action.

## AS AND FOR A SECOND CLAIM FOR MISREPRESNTATION AND CONCEALMENT

44. DEHC repeats and realleges the allegations contained in paragraphs "1" through "43" as though more fully set forth at length herein.

45. NexCen induced DEHC, Simon and Fullum to participate in the acquisition of the Bill Blass licensing business and to become a member of BBJ based on representations and assurances that NexCen had conducted extensive due diligence of the Bill Blass licensing business while owned by Resource Club.

46. In furtherance of this purported due diligence, NexCen advised and confirmed to DEHC that, inter alia, the Bill Blass jean licensing business (i) generated annual revenues of at least $55 million; (ii) generated annual net income of at least $14 million; and (iii) had not suffered any material adverse changes since 2006.

47. NexCen's representations and assurances regarding both the scope and comprehensive of its due diligence were false and known to be false when made.

48. NexCen misrepresented and concealed the true state of due diligence actually conducted, which was limited at best, if not non-existent.

49. DEHC reasonably relied on NexCen's myriad of assurances, promises and misrepresentations regarding the comprehensiveness of its due diligence because of NexCen's superior knowledge and access to Resource Club's financial information.

50. That by reason of the foregoing, DEHC is entitled to judgment against NexCen in the amount to be determined at trial to exceed $16 million, together with future lost profits, accrued interest and costs of this action.

## AS AND FOR A THIRD CLAIM
## FOR BREACH OF GOOD FAITH AND FAIR DEALING

51. DEHC repeats and realleges the allegations set forth in paragraphs "1" through "50" above as though more fully set forth at length herein.

52. NexCen and DEHC were each members of BBJ, and derivatively co-owners of BBI by virtue of the BBJ Operating Agreement.

53. That by operation of law, irrespective of any contrary provisions of the BBJ Operating Agreement, NexCen owed DEHC a non-waiveable duty of fair dealing and good faith and was required to comply with the letter and spirit of the BBJ Operating Agreement regarding providing DEHC with prior notice of any intended sale of BBI to Peacock.

54. In dereliction of these obligations, NexCen breached the duty of good faith and fair dealing by disregarding DEHC's rights and entitlements under the BBJ Operating Agreement in proceeding with a sale to Peacock without consultation or notice to DEHC.

55. That by reason of the foregoing, DEHC is entitled to judgment against NexCen in the amount to be determined at trial, to exceed $16 million, together with accrued interest and costs of this action.

## AS AND FOR A FOURTH CLAIM
## FOR NEGLIGENT MISREPRESENTATIONS

56. DEHC repeats and realleges the allegations set forth in paragraphs "1" through "55" above as though more fully set forth at length herein.

57. At all relevant times, NexCen had superior knowledge and access to Resource Club to conduct due diligence in connection with the purchase and acquisition of the Bill Blass licensing business.

58. In making various representations and assurances to DEHC and others concerning the results of its due diligence, NexCen had a duty to exercise reasonable and prudent care so as to ensure that NexCen's representations were not materially false or misleading.

59. That by reason of the acts complained of above, and to the extent that NexCen is not guilty of deliberately falsifying the scope of its due diligence, NexCen was at a minimum negligent in the manner in which it proceeded with due diligence and failed to uncover material adverse changes in the Bill Blass licensing business prior to closing.

60. That DEHC and others relied to their detriment on the negligent misrepresentations made by NexCen.

61. That by reason of NexCen's negligent representation, DEHC is entitled to a judgment against NexCen in the amount to be determined at trial, to exceed $16 million, together with accrued interest and costs of this action.

WHEREFORE, DEHC is entitled to judgment against NexCen consistent with the foregoing, together with such other and further relief as is just and proper.

Dated: New York, New York
July 29, 2010

        GOLDBERG WEPRIN FINKEL
        GOLDSTEIN LLP
        Attorneys for the DEHC
        1501 Broadway, 22nd Floor
        New York, New York 10036
        (212) 221-5700

By: _/s/ Kevin J. Nash_
        Kevin J. Nash
        A Member of the Firm

H:\sylvia\word\Designer License Holding Company and Designer Equity-DESIGN.28739\Designer Equity Holding Company LLC\Designer Equity v. Nexcen Brands\Complaint 7-28-10.doc

12