NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>DESIGNER EQUITY HOLDING COMPANY, LLC,<br><br>        Debtor. | Chapter 7<br><br>Case No. 09-17665 (JMP) |
| SALVATORE LAMONICA, CHAPTER 7 TRUSTEE OF DESIGNER EQUITY HOLDING COMPANY, LLC,<br><br>        Plaintiff.<br><br>v.<br><br>NEXCEN BRANDS, INC.,<br>        Defendant. | Adv. Proc. No. 10-03482 (JMP) |

**MEMORANDUM DECISION GRANTING MOTION TO DISMISS**

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
*Attorneys for Salvatore LaMonica, Chapter 7 Trustee of Designer Equity Holding Company, LLC*
1501 Broadway, 22nd Floor
New York, New York 10036

    Kevin J. Nash, Esq.
    J. Ted Donovan, Esq.

LITTMAN KROOKS LLP
*Attorneys for NexCen Brands, Inc.*
570 Lexington Ave., 44th Floor
New York, NY 10022

    Barry M. Bordetsky, Esq.

JAMES M. PECK
United States Bankruptcy Judge

*Introduction*

NexCen Brands, Inc. ("NexCen") has moved to dismiss the complaint brought against it by Designer Equity Holding Company, LLC ("DEHC"). DEHC, now acting through its chapter 7 trustee, seeks damages from NexCen based on four causes of action: breach of contract, misrepresentations and concealment, breach of the duty of good faith and fair dealing and negligent misrepresentation. Oral argument on the motion to dismiss (the "Motion") took place on October 18, 2011.

This is essentially a partnership dispute. Regardless of the legal theory underlying each cause of action, when reduced to its essence, DEHC complains that it was duped by a former business partner resulting in more than $16 million in claimed damages. Plaintiff alleges – incorrectly – that this is a core proceeding, despite the fact that all claims date back to a prepetition business dispute between the parties and do not implicate the core jurisdiction of the Court. Compl. ¶ 7. This plainly is a non-core dispute that could be litigated in another forum, does not arise in this chapter 11 case and does not directly affect bankruptcy administration. *See* 28 U.S.C. §§ 157 (b)(3), (c)(1); *see also JPMorgan Chase Bank v. Charter Communs. Operating, LLC (In re Charter Communs.)*, 409 B.R. 649, 653-54 (Bankr. S.D.N.Y. 2009) (citations omitted) (noting the non-exhaustive list of core matters provided under 11 U.S.C. § 157, "including issues concerning the administration of the bankruptcy estate, allowance or disallowance of claims, confirmation of plans, and other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship").

2

Accordingly, this is a familiar prototype of a non-core matter, and arguments raised by NexCen as to the impact of the Supreme Court's opinion in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), are misplaced and have no bearing on this lawsuit. *See* Reply at 8-9. The current litigation fits neatly within the existing jurisdictional scheme described in section 157(c)(1) of title 28 of the United States Code: it is not a core proceeding and is otherwise "related to" a case under title 11 – the chapter 7 case of DEHC. 28 U.S.C. § 157(c)(1); *see also*, *Joremi Enters. v. Hershkowitz (In re New 118th LLC)*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) (citations omitted) (explaining that a "proceeding is 'related to' a case under title 11, and falls within its non-core jurisdiction, if the outcome might have a 'conceivable effect' on the estate"). Furthermore, given the interlocutory character of the relief being granted, the Court has the unquestioned authority to resolve the Motion by means of this non-final decision. *See* 28 U.S.C. § 157(c)(1).

The damages sought by DEHC allegedly result from claimed acts and omissions of NexCen in connection with two unrelated transactions. The first involves the purchase of a licensing business, and the second involves the subsequent sale of that business to another party for an amount asserted to be less than DEHC itself was prepared to pay. According to the complaint, NexCen made certain inaccurate and misleading statements to DEHC in anticipation of the original acquisition that induced DEHC to invest capital in the project to its detriment. Compl. ¶¶ 11-25. After the acquisition, and following a period of less than stellar operations, it is asserted that NexCen did not deal fairly with DEHC in its handling of a sale process for the business and breached its contractual obligation to keep DEHC informed regarding the proposed sale. Compl. ¶¶ 27-37.

3

The underlying subject matter of this litigation is a business that at relevant times held intellectual property rights relating to use of the "Bill Blass" brand within the apparel industry, primarily in relation to branded denim products (i.e., jeans) manufactured for sale in North America. Compl. ¶ 18. NexCen acquired this licensing business on February 15, 2007 from an entity known as Resource Club, Ltd. ("Resource Club") for $54.6 million in cash and stock. Compl. ¶ 20. Following a period of lackluster performance, the business was sold at a substantial loss,[1] allegedly without proper notice to DEHC, to an acquisition entity formed by Peacock International Holdings LLC ("Peacock"). Compl. ¶ 34. The complaint criticizes the conduct of NexCen both in acquiring this business from Resource Club without sufficient due diligence and disclosures and later in selling the business to Peacock for inadequate consideration without proper notice to DEHC.

As a result of the acquisition from Resource Club, DEHC became the primary licensee for Bill Blass Jeans in North America.[2] In its complaint, DEHC sets forth claims as a dissatisfied former minority investor in NexCen's acquisition vehicle, expressing what amounts to a combination of both buyer's remorse and seller's remorse. The respective rights of DEHC and NexCen in relation to their ownership interests in the Bill Blass licensing business are set forth in an Investment Agreement that contains a fairly standard integration clause (everything prior in time to the date of the agreement loses all independent significance and is merged into the agreement) and an Amended and Restated Limited Liability Operating Agreement (the "BBJ

---

[1] According to NexCen's Memorandum of Law in Support of Motion to Dismiss Complaint, the sale price for the business was $10 million. Br. Supp. at 1. DEHC alleges that this amount was less than what it was prepared to pay for the business. Compl. ¶ 34.

[2] In connection with the acquisition of the Bill Blass intellectual property rights, the principals of DEHC capitalized it and its affiliate, Designer License Holding Company Inc., to become the primary licensee for Bill Blass jeans and wearing apparel in North America. Compl. ¶ 18.

Operating Agreement") that includes strong and unambiguous exculpatory language clearly calculated to protect the managing member. *See* Nam Cert. Ex. 2 (Investment Agreement)[3], Nam Cert. Ex. 3 (BBJ Operating Agreement). NexCen had a major share of the equity, and, under the BBJ Operating Agreement, functioned as managing member with full control over the business and the complete discretion and authority to act. Compl. ¶¶ 26, 31.

NexCen relies upon these governing documents that define the relationship between the members and contends that all of the claims made against it should be dismissed based on controlling contractual provisions – specifically section 8.7 of the BBJ Operating Agreement and section 6.05 of the Investment Agreement. Br. Supp. at 5-7. According to NexCen, these provisions cloak NexCen with total immunity from any and all liability in connection with both the original acquisition and the later sale of the Bill Blass licensing business. Br. Supp. at 1-2. Based on a review of the complaint in relation to these provisions, the Court agrees with NexCen that, as currently structured, the complaint fails to state claims on which relief may be granted and grants the Motion with leave to the trustee of DEHC to file an amended complaint.

### *Rule 12(b)(6) Standard*

Bankruptcy Rule 7012(b), which incorporates Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), permits a bankruptcy court to dismiss an adversary proceeding if a plaintiff's complaint fails to state a claim upon which relief may be granted. In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations of the complaint as true

---

[3] All references to "Nam Cert." are to that certain Certification of Sue J. Nam, dated October 12, 2010. Defendant filed the Nam Cert. in connection with the Motion. Although the complaint refers to and cites provisions of the Investment Agreement and the BBJ Operating Agreement, it does not attach either document. In ruling on a motion to dismiss, the Court may consider documents omitted from the plaintiff's complaint but attached by a defendant to its motion to dismiss. *See, e.g., Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d. Cir. 1991) (district court may consider exhibits omitted from plaintiff's complaint but attached as exhibits to defendant's motion papers because "there was undisputed notice to plaintiffs of their content and they were integral to plaintiff's claim").

5

and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). To survive a challenge to the adequacy of a complaint under Rule 12(b)(6), the factual allegations in a complaint need to be supported by more than merely conclusory statements. *Twombly*, 550 U.S. at 555. The allegations must be sufficient "to raise a right to relief above the speculative level," and provide more than a "formulaic recitation of the elements of a cause of action." *Id.* In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950. Therefore, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006) (citation omitted).

## *Discussion*

The thrust of the complaint is that DEHC and its principals (individuals named Arnold Simon and Timothy Fullum) were damaged by NexCen on two separate occasions – initially, at the time of their original investment, when they were given reason to believe that the business to be acquired was performing well and had good prospects for the future, and at a later date when the struggling business was sold to Peacock at a substantial loss without telling them in advance about the transaction and giving them the option to pay more consideration than Peacock had offered. DEHC claims that NexCen should be found liable for its conduct both at the formation stage of the venture and later at the asset disposition phase. The allegation is that NexCen provided misleading information as to the operations and value of the licensing business when the deal was originally structured and also breached its contractual obligation to provide information to DEHC about the transaction with Peacock. In the complaint, DEHC asserts four causes of action in connection with this central allegation – breach of the BBJ Operating

6

Agreement (Count I), misrepresentation and concealment (Count II), breach of the covenant of good faith and fair dealing (Count III) and negligent misrepresentation (Count IV).

No theory currently asserted by DEHC can survive the Motion due to certain express limitations of liability in the transaction documents that protect NexCen from the claims made in the complaint. The first of these is an all-encompassing and conspicuously broad exculpation section contained in the BBJ Operating Agreement that, on its face, appears to fully exempt NexCen from any liability for failing to give notice to DEHC of a sale of substantially all of the assets to Peacock in advance of that sale. Section 8.7 of this agreement provides that the managing member (NexCen)[4] shall not be liable to any member or subject to injunctive relief for a failure to give advance notice of the sale of the company's assets and explicitly states that NexCen has complete discretion and authority in relation to virtually all activities, including extraordinary activities, involving the company and its assets. Nam Cert. Ex. 3 at § 8.7. This freedom to act without liability is consistent with section 8.1 of the agreement that vests all management authority exclusively in NexCen as managing member. *See* id. at § 8.1. Although the exculpation language in section 8.7 is plainly worded and unambiguous, its placement within a proviso creates an obvious conflict with the obligation of the managing member to provide at least thirty days' advance notice of listed actions (including a sale) and to consult with members with respect to such actions. Nam Cert. Ex. 3 at § 8.7.

As a result, this section is something of a curiosity. The language gives and takes away at the same time. It sets reasonable expectations as to how the managing member will respect the interests of the minority member in making important business decisions. But an obligation

---

[4] "Managing Member" is defined in section 1.1 of the BBJ Operating Agreement as NexCen or its successors or permitted assigns. Nam Cert. Ex. 3 at § 1.1.

7

to consult with a minority member of the company that can be disregarded with no repercussions and without fear of any accountability raises an existential question as to what the parties actually meant to accomplish in this section of the BBJ Operating Agreement.

Perhaps the language was intended to describe a non-binding standard of conduct in managing the affairs of the company or to provide some measure of comfort to an otherwise powerless minority investor, but this is pure speculation and of no significance in deciding the Motion. Despite the signals within this section that point in opposite directions, the language clearly states that NexCen shall not be liable for a failure to abide by the agreement to give notice or to consult. In this respect, the consequences of the exculpation proviso necessarily must override any contractual management standard because the failure to give notice and consult is harmless and does not give rise to liability. It is not appropriate for the Court to re-write a contractual provision negotiated by sophisticated parties with "significant experience and success in the apparel industry." Compl. ¶ 10. Given the express declaration that NexCen may act with impunity and without liability, the complaint does not plead a plausible claim for breach of contract. Count I of the complaint, therefore, is dismissed for failure to state a claim on which relief may be granted.

The second provision that supports dismissal is an integration clause in the Investment Agreement that neutralizes any claims that are based on prior understandings or representations. Section 6.05 of the Investment Agreement provides that the documents executed in connection with the acquisition "embody the complete agreement among the parties and supersede and preempt any prior understandings, agreements or representations by or among the parties … ." Nam Cert. Ex. 2 at § 6.05. In light of this customary language that cuts off rights based on prior communications, the complaint does not state plausible claims for relief based on earlier

8

understandings of DEHC or representations that may have been made by NexCen. Whatever circumstances may have caused DEHC to invest in the venture as a minority partner have merged into the definitive documents relating to the acquisition and will not support a cause of action for misrepresentation and concealment. Accordingly, Count II of the complaint is dismissed for failure to state a claim on which relief may be granted.

The remaining counts of the complaint for breach of the duty of good faith and fair dealing and for negligent misrepresentation also are not viable causes of action as stated in the complaint.

Under Delaware law,[5] "obligations under the covenant of good faith and fair dealing should be implied only in rare instances." *Homan v. Turoczy* 2005 Del. Ch. LEXIS 121 at *63 (citations omitted). Indeed, Delaware courts decline to allow parties to claim breach of the implied covenant "as a license for the judicial crafting of contractual protections that could have been, but were not, extracted at the bargaining table." Id. at *62 (citations omitted). "[C]ourts should not imply alleged obligation where the contract addresses the subject of the alleged wrong, but fails to include the obligation alleged." Id. at *63 (citation omitted).

Here, the "no liability" language of section 8.7 unambiguously excuses NexCen from liability for failure to consult with DEHC or provide notice to DEHC in connection with a sale of the business. In addition, the merger terms set forth in section 6.05 of the Investment Agreement confirm that the parties did not have any unwritten expectations with respect to section 8.7. DEHC cannot rely on the implied covenant of good faith and fair dealing to circumvent the

---

[5] There is no dispute among the parties that Counts I and III (breach of contract and breach of the covenant of good faith and fair dealing) are to be determined under Delaware law and Counts II and IV (misrepresentation and concealment and negligent misrepresentation) are to be determined under New York law.

9

express provisions of two separate agreements that it negotiated and executed. Therefore, Count III of the complaint is dismissed for failure to state a claim on which relief may be granted.

To state a cause of action for negligent misrepresentation under New York law, a plaintiff must establish (i) that the defendant had a duty to use reasonable care to impart correct information because of some special relationship between the parties, (ii) that the information was incorrect or false, and (iii) that the plaintiff reasonably relied upon the information provided. *Grammer v. Turits* 706 N.Y.S.2d 453, 455 (2d Dep't. 2000). The Court does not need to look further than the "reasonable reliance" language set forth in *Grammer* to conclude that Count IV of the complaint fails to state a claim on which relief may be granted. Section 6.05 of the Investment Agreement bars claims for relief based on any oral statements that may have been made by NexCen. Count IV of the complaint is specifically based on NexCen's alleged "superior knowledge and access to Resource Club to conduct due diligence in connection with the purchase and acquisition of the Bill Blass licensing business." Compl. ¶ 57. Whatever may have been said (short of actual fraud) to induce the original investment has merged into the definitive documents. DEHC, therefore, is unable to show that it reasonably relied on anything other than what is set forth in the parties' agreements, and Count IV of the complaint is dismissed for failure to state a claim on which relief may be granted.

In its Memorandum of Law in Opposition to Motion of NexCen Brands, Inc. to Dismiss the Complaint, the chapter 7 trustee of DEHC requests permission "to amend the complaint to address any genuine pleading deficiencies as may be necessary." Br. Opp'n at 25. Counsel to the trustee renewed this request at oral argument. Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading … by leave of court … [which] leave shall be freely given when justice so requires." The Second Circuit "strongly favors liberal grant of an

opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Cmty. Ass'n* 464 F. 3d 274, 276 (2d Cir. 2006). Moreover, "where a plaintiff clearly has expressed a desire to amend, a lack of a formal motion" to amend is "not a sufficient ground … to dismiss without leave to amend." Id. (citation omitted). For these reasons, the Court is allowing DEHC to amend its complaint.[6]

For the reasons stated, the Motion is granted with leave to file an amended complaint within thirty days from the date of this memorandum decision. NexCen is directed to submit an order consistent with this decision.

IT IS SO ORDERED.


Dated:   New York, New York
         November 9, 2011

                                             *s/ James M. Peck*
                                             Honorable James M. Peck
                                             United States Bankruptcy Judge

---

[6] In granting leave to amend, the Court does not mean to imply that the infirmities in the complaint may be corrected by amendment.